**In re Srinivasan KRISHNAMURTHY; Annapoorna Krishnamurthy, Debtors.**

**Srinivasan KRISHNAMURTHY; Annapoorna Krishnamurthy, Appellants,**

v.

**Prasad NIMMAGADDA; Lih Guin Nimmagadda, Appellees.**

**BAP No. NC–96–1409–MeOV. Bankruptcy No. 94–47652. Adv. No. 94–4751.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 23, 1997.

Decided Feb. 27, 1997.

Amended April 3, 1997.

---

Srinivasan and Annapoorna Krishnamurthy, Santa Clara, CA, pro se.

Roger T. Ritter, Law Offices of Joel D. Adler, San Francisco, CA, for Prasad and Lih Guin Nimmagadda.

Before: MEYERS, OLLASON and VOLINN, Bankruptcy Judges.

## AMENDED OPINION

MEYERS, Bankruptcy Judge:

## I

## OVERVIEW

The appellants' disorganized and nonsensical arguments notwithstanding, this case is quite simple. A state court jury assessed punitive damages against the appellants under Section 3294 of the California Civil Code which requires a finding of "oppression, fraud or malice." A finding of oppression or malice satisfies Bankruptcy Code § 523(a)(6).

A finding of fraud coupled with the undisputed fact that appellants and appellees were partners, and hence fiduciaries, satisfies § 523(a)(4). Either way the state court judgment established that appellees have a valid claim and that such claim is nondischargeable. The *Freeman & Mills* case relied upon by the appellants does not apply to the facts of this case. The appellants' claim of extrinsic fraud was supported by neither sufficient evidence nor satisfactory factual allegations. The appellees were entitled to collateral estoppel and summary judgment. **We AFFIRM.**

## II

## FACTS

### A. State Court Litigation

On January 20, 1988, Prasad and Lih Guin Nimmagadda, ("Nimmagaddas"), filed a "Second Amended Complaint," ("Complaint"), in Superior Court asserting seven causes of action against Srinivasan and Annapoorna Krishnamurthy, ("Debtors"): dissolution and accounting; breach of contract; fraud; constructive fraud; breach of covenant of good faith and fair dealing; and breach of fiduciary duty—the Debtors and the Nimmagaddas were, at the time of the Debtors' misdeeds, partners.

The trial took more than a month. The jury returned general verdicts against the Debtors and in favor of the Nimmagaddas. The verdicts did not indicate upon which cause(s) of action damages were awarded, however, the jury did award punitive damages under California's "oppression, fraud or malice" standard.[1] On April 1, 1988, judgment was entered on the general verdicts awarding damages in the amount of $234,847 and punitive damages in the amount of $25,000 against each of the Debtors.

The Debtors filed motions for a new trial and for judgment notwithstanding the verdict, both of which were denied. The Nimmagaddas filed a motion for a new trial with

---

1. See, Section 3294 of the California Civil Code set out below.

respect to damages, which was granted "because of inadequate damages."[2]

In June of 1988, the Debtors appealed the April 1, 1988 judgment and the order granting the Nimmagaddas a new trial. The California Court of Appeals affirmed the trial court on both issues and awarded the Nimmagaddas costs on appeal.

In September of 1992 a new trial was held on the issue of the amount of damages. The jury was instructed that "Defendants have been found liable to plaintiffs for punitive damages." The jury was instructed on fraud and breach of fiduciary duty; the breach of contract cause of action had been dismissed against both of the Debtors—no instructions were given for breach of contract.

In this second trial the jury awarded, in addition to compensatory damages, punitive damages in the amount of $125,000 against both of the Debtors.

On September 17, 1992, the Nimmagaddas obtained a state court judgment against the Debtors. The Debtors appealed, attacking both the determination of liability and the award of damages.

On November 20, 1992, the trial judge found that the award of punitive damages with respect to Srinivasan Krishnamurthy was excessive and granted a new trial on that issue.

On January 28, 1994, the California Court of Appeals dismissed the Debtors' appeal with respect to the determination of liability stating:

> On the merits, Krishnamurthy first argues that the punitive damages award is void as a matter of law because there was no clear and convincing evidence of fraud, oppression or malice. At the first trial, the issue of entitlement to punitive damages was determined. The jury was instructed on the need for clear and convincing evidence of oppression, fraud or malice to support its finding that punitive damages were warranted. Its finding of liability—including the determination to award punitive damages—was affirmed in our

previous appeal. That decision constitutes the law of the case, conclusively establishing the liability issue for our purposes. At the second trial, the only issue was the amount of damage that the Nimmagaddas suffered.

The Court of Appeals affirmed the judgment awarding the compensatory and punitive damages and provided the following evaluation of the Debtors' appeal:

> On appeal, Krishnamurthy raises a myriad of contentions. Having reviewed the record of this appeal and several of Krishnamurthy's earlier appeals, we are satisfied that the trial court's sanctions order was well justified. Krishnamurthy has engaged in a systematic practice of filing meritless motions and appeals that only thinly disguise her intention to delay satisfaction of all judgments and orders entered against her. We will not countenance her disrespect of the judicial system by allowing any further delay.... In particular, Annapoorna Krishnamurthy's briefs in this appeal establish repeated attempts to inject new life into issues that have already been resolved by this court. By ignoring well-established doctrine of law of the case as well as fundamental principles of jurisprudence, Krishnamurthy has forced the Nimmagaddas to defend against all aspects of this case that have been put to rest years ago.
>
> Subject to review by our Supreme Court, this opinion should put to rest, for all eternity, any and all issues relating to this litigation, and with the finality of this opinion, there should be no further delays in the ultimate disposition of this cause.

That decision was filed nearly three years ago.

### B. Bankruptcy Proceedings

On November 15, 1994, the Debtors filed a petition under Chapter 7.

On December 7, 1994, the Nimmagaddas filed a nondischargeability action under Bankruptcy Code §§ 523(a)(4) and 523(a)(6).

---

**2.** In lieu of a new trial Nimmagaddas were offered, by the court, additur raising the awards to $375,000 and $25,000, jointly and severally

against Debtors. Apparently the Nimmagaddas did not accept the offer and elected to go on to trial on damages.

The Debtors filed a motion to strike and motion to dismiss, both of which were denied. The Debtors answered on March 27, 1995.

Both the Debtors and the Nimmagaddas filed motions for summary judgment. The Bankruptcy Court granted the Nimmagaddas' motion determining that all of the necessary findings had been made by the state court and that the Debtors were collaterally estopped from relitigating those issues. The Debtors filed a motion for reconsideration which was denied.

## III

### ISSUES PRESENTED

First we will address the impact of the intervening case, *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 44 Cal.Rptr.2d 420, 900 P.2d 669 (1995), on the Nimmagaddas entitlement to collateral estoppel. Next we will consider whether the Bankruptcy Court properly granted summary judgment in light of the Debtors' bald allegations of extrinsic fraud. Finally we will determine whether the record supported a grant of summary judgment in favor of the Nimmagaddas.

## IV

### STANDARDS OF REVIEW

The Panel determines its jurisdiction *sua sponte*. *In re Peters*, 191 B.R. 411, 416 (9th Cir.BAP1996).

The availability of collateral estoppel is a question of law reviewed *de novo*. *In re Nourbakhsh*, 67 F.3d 798, 800 (9th Cir.1995). The bankruptcy court's findings of fact are reviewed under the "clearly erroneous" standard while conclusions of law are reviewed *de novo*. *In re A & C Properties*, 784 F.2d 1377, 1380 (9th Cir.1986).

The granting of summary judgment is reviewed *de novo*, making all reasonable inferences in favor of the non-movant to determine whether there exists any genuine issue of material fact precluding judgment in favor of the movant as a matter of law. *In re Lewis*, 97 F.3d 1182, 1185 (9th Cir.1996).

## V

### DISCUSSION

#### A. Jurisdiction

On April 18, 1996, the Debtors filed their "Notice of Appeal," purporting to appeal from the following orders:

1. The April 9, 1996 judgment determining that the Nimmagaddas' claim is nondischargeable;

2. the April 9, 1996 order granting the Nimmagaddas' motion for summary judgment, denying the Debtors' cross-motion for summary judgment and denying the Debtors' motion to dismiss the Nimmagaddas' complaint;

3. the June 16, 1995 order granting the Nimmagaddas' motion to dismiss the Debtors' counterclaim; and

4. the April 12, 1995 order extending the last date for the Nimmagaddas to file objections to discharge under Bankruptcy Code § 727.

The orders and judgment entered on April 9, 1996, were timely appealed—the period did not begin running until the Debtors' timely motion for reconsideration was denied, April 17, 1996. *In re D.W.G.K. Restaurants, Inc.*, 42 F.3d 568, 569 (9th Cir.1994); *In re Watson*, 192 B.R. 739, 742 n. 3 (9th Cir. BAP 1996).

■ With respect to the June 16, 1995 order granting the Nimmagaddas' motion to dismiss the Debtors' counterclaim, the Debtors had filed a "timely" notice of appeal on June 26, 1995. On August 10, 1995, the Panel, finding the order to be interlocutory, entered an order denying the Debtors "Motion for Leave to Appeal," and dismissing appeal. The June 16, 1995 order became final upon entry of the motion for summary judgment and was thus timely appealed with the April 9, 1996 orders.

The order entered April 12, 1995, extending the time to file a complaint objecting to discharge under § 727, on the other hand, remains interlocutory. *In re Travers*, 202 B.R. 624, 626 (9th Cir. BAP 1996). Since the judgment was limited to the causes of action under § 523—no final judgment has been entered with respect to the § 727 causes of

action. 28 U.S.C. § 158(a) authorizes the Panel to grant leave to appeal an interlocutory order, treating the notice of appeal as a motion for leave to appeal. *Id.;* Fed. R.Bankr.P. 8003(c). As a practical matter, however, in light of their successful § 523 action, the Nimmagaddas may not wish to pursue their § 727 action. The Panel thus declines to grant leave to appeal the April 12, 1995 order.

On April 23, 1996, the Debtors filed an amended notice of appeal to include for appellate review the Bankruptcy Court's denial of the motion for reconsideration. The appeal from that order, which was entered on April 17, 1996, was timely.

## B. Collateral Estoppel

The Debtors argue that the Bankruptcy Court improperly applied the principles of collateral estoppel to the state court judgment for two reasons: First, the Debtors argue that intervening case law has stripped the judgment of its power to bind, and second the state court judgment was obtained through extrinsic fraud. Neither of the Debtors' arguments are supported by the record.

### 1. Application of Subsequent Case Law—*Freeman & Mills*

The Debtors' primary argument is that the state court's judgment in favor of the Nimmagaddas may not be afforded res judicata consequences as it was preempted by a state court decision, *Freeman & Mills, Inc. v. Belcher Oil Co.,* 11 Cal.4th 85, 44 Cal.Rptr.2d 420, 900 P.2d 669 (1995), in which the California Supreme Court held that damages in tort would not lie for bad faith denial of contract. According to the Debtors, "[t]he main issue for this court to determine is whether the doctrine of collateral estoppel can be invoked in a case as here, where there has been an overruling decision in favor of a general rule precluding tort recovery for noninsurance breach of contract actions." The Debtors have misinterpreted the *Freeman & Mills* case.

In *Freeman & Mills,* the California Supreme Court addressed the issue of "whether, and under what circumstances, a party to a contract may recover in tort for another party's bad faith denial of the contract's existence." *Id.* at 88, 44 Cal.Rptr.2d 420, 900 P.2d 669. The court ultimately determined that it had, in *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984), "incorrectly recognized a tort cause of action based on the defendant's bad faith denial of the existence of a contract between the parties." *Id.*

The rule of *Freeman & Mills* is simply and exclusively that breach of a noninsurance contract and denial of its existence, *"in the absence of violation of 'an independent duty arising from principles of tort law,' "* does not give rise to a tort claim. *Id.* at 102, 44 Cal.Rptr.2d 420, 900 P.2d 669. The mere fact, however, that the conduct of the Debtors may also have amounted to a breach of contract, does not, under California law, preclude an independent finding that the Debtors committed a tort. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 515, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994) ("Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law.") (Cited with approval in *Freeman & Mills,* 11 Cal.4th at 102, 44 Cal.Rptr.2d 420, 900 P.2d 669.)

As the Nimmagaddas and the Bankruptcy Court explained to the Debtors, the Nimmagaddas' state court judgment was not based on breach of contract and hence *Freeman & Mills* has no application. The Nimmagaddas dropped their breach of contract claim before obtaining the judgment upon which their nondischargeability action is based—before the jury instructions were given, counsel for the Nimmagaddas explained to the trial court:

Now, for reasons that needn't concern you, just tactical, my clients have decided to present this case to you on the fraud and breach of fiduciary duties issues. So instructions on the contract issues won't come in.

All the damages I described at the beginning of the case, are damages for fraud and breach of fiduciary duty.

The Debtors' argument that *Freeman & Mills* "prohibits tort recovery for breach of a fiduciary duty between partners that is founded on the partnership agreement," finds no support in the *Freeman & Mills* decision.

■ In the case at hand the California courts found that the Debtors committed the independent torts of breach of fiduciary duty and fraud. The Bankruptcy Court clearly found that the state court judgments were based upon non-contractual causes of action. The Bankruptcy Court properly found that these state court findings necessarily satisfied the Bankruptcy Code requirements of §§ 523(a)(4) and 523(a)(6). The Bankruptcy court specifically addressed the Debtors' "*Freeman & Mills*" argument, and correctly found the case to be inapplicable.

## 2. Extrinsic Fraud

Since shortly after the state court judgment was entered the Debtors have been making unintelligible allegations of "extrinsic fraud." The Debtors first made the argument fruitlessly to the state trial court in their "Memorandum of Points and Authorities in Support of Motion for Equitable Relief From Judgment Obtained by Reason of Extrinsic Fraud or Mistake." Next the Debtors made the argument in vain to the California Court of Appeals.

Having had no success in the state courts the Debtors made the argument to the Bankruptcy Court. One of the Debtors' twenty-three affirmative defenses in their answer to the Nimmagaddas' nondischargeability complaint was that the state court judgment was obtained "through extrinsic fraud perpetrated by plaintiffs on the state courts." The Debtors repeated their allegations of extrinsic fraud in their counterclaim which was dismissed by the Bankruptcy Court.

Finally, the Debtors provided the following "ILLUSTRATION OF PLAINTIFFS' EXTRINSIC FRAUD" to the Bankruptcy Court in their reply in support of their motion for reconsideration:

Defendants' claim of extrinsic fraud arises from the fact that defendants have been prevented from presenting all of their case to the court and the attorney regularly employed by defendants corruptly sold out his clients' interests to the other side, with the result that there has never been a real contest in the trial.... Defendants' allegations are real and not amorphous as argued by plaintiffs.

In addition, extrinsic fraud resulted also from "corruption of or duress upon the court or the attorney for the party against whom the judgment was rendered" and the judgment was "based on a claim that the party obtaining the judgment knew to be fraudulent."[3]

It appears from the record that this is the most the Debtors ever produced as evidence or argument of extrinsic fraud.

■ The BAP has recently held that a state court judgment is subject to attack if the judgment was procured through extrinsic fraud:

A state court judgment is subject to collateral attack if .... the judgment was procured through extrinsic fraud. Equity will set aside a judgment on the basis of extrinsic fraud if the judgment resulted from circumstances of unfairness or injustice where the aggrieved party was not afforded an opportunity to participate in the proceedings or to present his case to the court. The basic requirement for invoking the extrinsic fraud exception is that there has been no fair adversary trial at law, either because the aggrieved party was kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.

*In re Lake*, 202 B.R. 751, 758 (9th Cir. BAP 1996). However, in order to establish a case for vacating a California state court judgment the movant must plead and prove that he has a meritorious case. *Lake, supra*, 202 B.R. at 759 citing *New York Higher Educ. Assistance Corp. v. Siegel*, 91 Cal.App.3d 684, 689, 154 Cal.Rptr. 200 (1979).

■ In *Lake* the debtor plead specific instances of extrinsic fraud which had per-

---

**3.** The claim of extrinsic fraud in the counter- claim is lengthier, but no more lucid.

mitted claimant to unwittingly obtain a default judgment.[4] In the case at hand the Debtors offered no similar proof—they simply set forth more of their convoluted and unsupported argument. To survive summary judgment the Debtors were obliged to produce some "significant probative evidence." *Lewis, supra,* 97 F.3d at 1187, citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory arguments unsupported by factual statements or evidence do not meet this burden. *Lewis, supra,* 97 F.3d at 1187.

Nothing alleged by the Debtors would support a finding that "there has been no fair adversary trial at law." To the contrary, the Debtors litigated and appealed these issues for over six years in the state courts. The Bankruptcy Court properly addressed the Debtors' claim of extrinsic fraud.

**C. Summary Judgment Was Supported By the Record**

 That punitive damages were awarded and that the Debtors and the Nimmagaddas were partners at all relevant times are apparent from the record. These undisputed facts, standing alone, dictate that the decision of the Bankruptcy Court be affirmed.

Section 3294 of the California Civil Code, which governs the imposition of punitive or exemplary damages, provides in relevant part:

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may

recover damages for the sake of example and by way of punishing the defendant. Cal.Civ.Code § 3294(a). "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others"; "oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights"; and "fraud" means "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal.Civ.Code § 3294(c).[5]

The terms "malice" and "oppression" are often used by the California courts interchangeably without any distinction. *In re Aubrey,* 111 B.R. 268, 275 (9th Cir. BAP 1990). The BAP has held that the statutory definition of the term "oppression" as defined in the California courts is equivalent to "malice", and that either satisfies the requirements of § 523(a)(6).[6] *Id.; In re Giangrasso,* 145 B.R. 319, 323 (9th Cir. BAP 1992). In *In re Moore,* 186 B.R. 962 (Bkrtcy.N.D.Cal. 1995), the court concluded:

As discussed above, however, it appears that because "conscious disregard" is required for a finding of malice under the California statute since the 1980 amendment, "reckless disregard" is no longer sufficient to sustain a punitive damage award under California law. It therefore appears that under California law, punitive damage awards under Cal.Civ.Code § 3294 can only properly be made in response to wrongful acts that would, by definition, also violate 11 U.S.C. § 523(a)(6).

---

4. In *Lake* the plaintiff had threatened the life of the defendant causing the defendant to move out of the state. The plaintiff then obtained a default judgment serving the summons by publication. The defendant did not learn of the lawsuit until several months after the default judgment had been entered. 202 B.R. at 754–55.

5. At the 1988 trial, the one in which punitive damages were initially awarded, the jury was read an instruction which tracked § 3294, ("BAJI 14.72.1").

6. Section 523(a)(6) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

*Id.* at 973. If the court can determine that the state court jury found "oppression" or "malice", then a judgment for punitive damages satisfies the willful and malicious requirements under § 523(a)(6). *Giangrasso,* 145 B.R. at 323.

Since, however, the phrase "oppression, fraud, or malice" in Civil Code § 3294 is in the disjunctive; an award of punitive damages could be based upon fraud alone. *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.,* 66 Cal.App.3d 101, 135, 135 Cal.Rptr. 802 (1977); *Las Palmas Associates v. Las Palmas Center Associates,* 235 Cal. App.3d 1220, 1239, 1 Cal.Rptr.2d 301 (1991). In this case, however, a finding of fraud is also sufficient to render the obligation nondischargeable because the Debtors and the Nimmagaddas were fiduciaries.

Whether a relationship is fiduciary within the meaning of § 523(a)(4) is a question of federal law.[7] *Lewis, supra,* 97 F.3d at 1185. The issue can be resolved by looking to state law. *Id.; Ragsdale v. Haller,* 780 F.2d 794, 796–97 (9th Cir.1986); *In re Short,* 818 F.2d 693 (9th Cir.1987). As the Bankruptcy Court explained at the hearing, under California law a partner is a fiduciary within the meaning of § 523(a)(4). Thus, even if the punitive damages were based upon a finding of fraud, it was fraud while acting as a fiduciary, and the elements of § 523(a)(4) are unquestionably established.

The willful and malicious elements under § 523(a)(6) or the fraud as a fiduciary elements of § 523(a)(4) were specifically determined in the state court proceeding. It would have been unjust to require the Nimmagaddas to relitigate these issues before the Bankruptcy Court. Incurring these costs anew is precisely the evil the doctrine of collateral estoppel was designed to prevent. See *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980);

---

**7.** Section 523(a)(4) provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

*In re Bugna,* 33 F.3d 1054, 1057 (9th Cir. 1994).

## VI

## CONCLUSION

That punitive damages were awarded under California law necessarily establishes that the jury found "oppression, fraud or malice." Oppression or malice satisfy § 523(a)(6). Fraud, while acting as a fiduciary, satisfies § 523(a)(4). The Bankruptcy Court properly granted summary judgment in favor of the Nimmagaddas and against the Debtors. The orders and judgments from which appeal was properly taken are hereby **AFFIRMED.**

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;